[Civ. No. 3372. Fourth Dist. July 10, 1945.]

GEORGE CORODEMUS et al., Plaintiffs and Respondents, v. FLORENCE BORDEN et al., Defendants; FLORENCE BORDEN LANG et al., Appellants; L. G. WESLEY et al., Defendants and Respondents.

Joseph E. Daly for Appellants.

George R. Baird, John T. Holt, Luce, Forward, Lee & Kunzel and Richard F. Kahle for Respondents.

BARNARD, P. J.—This is an action to quiet title to certain real property in Oceanside, improved and used as a hotel.

This property was acquired by Sidney O. Lang in October, 1938, and conveyed by him to Florence Borden in January, 1939. These parties worked together in the transactions here involved and were married April 1, 1941, and for convenience Florence Borden will be referred to as Mrs. Lang. This property was incumbered with mortgages and assessment liens, with certain payments long overdue, and early in 1940 the Langs advertised it for sale in several papers and then became interested in trading their equity for farm land in Imperial County. W. S. Harris, a real estate broker, became their agent in an attempt to accomplish this purpose.

On April 14, 1940, Mrs. Lang signed a written offer in which she offered to exchange the hotel property, subject to incumbrances to be adjusted to $5,000, for certain real property near El Centro owned by Dominic Gross, subject to incumbrances of $3,000. This offer had attached to it a form of acceptance to be signed by Gross. Gross rejected the offer and refused to sign the acceptance, although the date of his rejection does not appear.

About this time Harris approached the Wesleys, who agreed to exchange three parcels of land near Alpine which they owned, together with a $2,000 note and trust deed covering adjoining property, for Mrs. Lang's equity in the Oceanside property. On April 18, 1940, the Langs, Harris and the Wesleys met in Oceanside, where certain instruments were exe-

cuted. It clearly appears that the Wesleys knew nothing of the proposed Gross deal and that they were trading the Alpine trust deed and the Alpine realty for Mrs. Lang's equity in the Oceanside property. The Langs testified that they knew that the Wesleys were taking over the Oceanside property and that some sort of a three-way deal was being worked out by Harris. This is borne out by what was done then and later, but the Langs' further contention that they understood that their deal with the Wesleys was not to be effective unless and until their deal with Gross was consummated is not so well supported.

On that day, April 18, Mrs. Lang signed and acknowledged a grant deed conveying the Oceanside property, subject to incumbrances of record, to the Wesleys. Wesley and Harris testified that after it was signed and acknowledged Mrs. Lang handed this deed to Wesley. The Langs testified that after it was acknowledged Harris put the deed in his pocket. In any event, before these parties left the notary's office, and without the knowledge of the Wesleys, Harris gave to Mrs. Lang a paper acknowledging his receipt of this deed "to be used as per agreement dated April 14th, 1940." There also appears on the bottom of the written offer to exchange properties with Gross, above referred to, a notation written in longhand dated April 18, addressed to Harris and signed by Mrs. Lang, which reads: "I herewith hand to you a deed from Florence Borden to L. G. Wesley and Jesty A. Wesley which you are *arthraused* to use when you can comply with above agreement."

The Langs, Harris and the Wesleys went from the notary's office to the Oceanside property, where the Wesleys, under the instructions of Harris, assigned the Alpine trust deed and note to one Harrison and delivered them to Harris. This was apparently done with the idea, and on the representation of Harris, that they would be used in obtaining something from Harrison that would aid the Langs in acquiring Gross' property near El Centro. It appears that this trust deed and note were exchanged by Harris for Harrison's equity in certain other property in El Centro, which equity was later lost through some foreclosure proceeding. On the same day, April 18, the Wesleys took possession of the Oceanside property and began operating the hotel, paying the taxes and bills and reducing the incumbrances. The Langs remained at the hotel for about a month assisting the Wesleys in learning the business, and then moved away.

On April 20, 1940, the second day after most of these instruments were signed, Mrs. Lang entered into an escrow agreement, at a title office in El Centro, which was signed by her and also by Gross and his wife. This provided that the Gross' agreed to sell their land free from incumbrances, except current taxes and a certain lease, to Mrs. Lang for $4,000 and that she agreed to buy the same and to pay that amount by paying $1,000 on July 1, 1940, and $3,000 on August 1, 1940. This agreement also contained a provision instructing the escrow holder to secure, before the close of the escrow, a deed from the Wesleys conveying the Alpine property to a grantee approved by Harris, and authorizing the escrow agent to deliver this deed to Harris on receipt by the escrow holder of "the $1000 called for from the purchaser on July 1, 1940." This provision called for something on the side which was desired by Mrs. Lang, but which did not affect the Gross deal except as it may have been designed to enable her to get the money with which to make one of the payments to Gross. This escrow matter dragged along for months and that transaction was never completed.

The deed to the Oceanside property was recorded by the Wesleys on April 29, 1940. The court found on ample evidence that the Langs had actual knowledge of such recording at that time. While the Langs denied this they admitted that by July, 1940, they knew that this deed had been recorded. The Wesleys discovered that the liens against the Oceanside property exceeded the amount represented to them by $325 and demanded payment of that amount. On June 22, 1940, the Langs gave to the Wesleys a note for that amount, payable in six months. On June 23, 1940, the Wesleys executed a deed conveying the Alpine realty to Mrs. Lang and delivered it to Harris as her agent. Harris deposited this deed in the escrow in El Centro, above referred to.

On April 7, 1941, the Wesleys filed suit against the Langs on the $325 note which had not been paid, and attached Mrs. Lang's interest in the Alpine property. The Langs employed counsel who endeavored to settle this suit and also pressed a claim against Harris, on the ground that the Alpine trust deed and note had been lost to them through his fault. Some investigation of Harris was made by the district attorney and there was some effort made to have his real estate broker's license revoked. Finally, Mrs. Lang's counsel arranged a settlement

with Harris and he was given a written release by the Langs dated October 27, 1942. This release provided that Harris was to obtain: A dismissal of the suit on the $325 note and a cancellation of that note; a release of the Wesleys' attachment on the Alpine property, and a return to the Langs of the deed to that property, which was still held in the escrow in El Centro; and a release from all obligations to Gross arising out of that escrow agreement. It was then provided that if Harris would obtain these things the Langs would release him from any and all claims "growing out of the said transactions involved in said escrow," and any claim involving the trust deed on the Alpine property. Harris obtained all of these things, the suit was dismissed and the note returned, the escrow was abandoned, and the deed to the Alpine property was delivered to the Langs on October 27, 1942, and they retained it until it was placed in evidence at the trial of this action, although it was not recorded. They never offered to return this deed to the Wesleys, and made no demand upon them or complained against them until the cross-complaint was filed herein.

In the meantime, on August 5, 1941, the Wesleys deeded the Oceanside property to George Corodemus, taking in exchange certain real property in San Diego owned by the latter. This deed was recorded on September 12, 1941.

Preceding all of these matters and on February 10, 1940, Mrs. Lang had executed and delivered a deed conveying the Oceanside property to one Winterstein. The evidence shows and the court found that this deed was, in fact, a mortgage given to secure a loan. This deed was not recorded at the time but for some reason was recorded on June 26, 1943. That loan was, however, fully repaid and on August 30, 1943, Winterstein gave a grant deed to the Oceanside property to Mr. Lang, who later deeded to himelf and Mrs. Lang, as joint tenants. These last two deeds were not recorded until after this action was filed. The Corodemuses, being in escrow with a sale of the Oceanside property, discovered, when search of the title was made, that the deed to Winterstein had been recorded on June 26, 1943, and as a result brought this action to quiet their title on September 14, 1943.

In this action the Langs and Winterstein were named as defendants. The Langs filed a cross-complaint, adding the Wesleys, the Gross', Harrison and Harris as cross-defendants. They sought to quiet title in themselves and asked for an

accounting of all income, with treble damages for unlawful entry. The court found the facts in general to be as above stated, and further found that on April 18, 1940, Mrs. Lang delivered the deed to the Oceanside property into the hands of Harris, her agent, but limited his authority to deliver it to the Wesleys; that his delivery of the deed to the Wesleys on April 18, 1940, was beyond the scope of his authority; that this act did not, of itself, effect a valid or legal delivery of this deed; that the Wesleys had no knowledge of the offer of exchange with the Gross' dated April 14, 1940, nor of the receipt for the deed given by Harris to Mrs. Lang, nor of Harris' lack of authority to make a valid delivery of the deed; that the negotiations by which the Wesleys agreed to purchase the Oceanside property were conducted with Harris, as the agent of Mrs. Lang; that on April 18, 1940, the Wesleys took full and complete possession of that property with the acquiescence and consent of the Langs and thereafter made payments upon the liens thereon and treated said property as their own; that this deed to the Wesleys was recorded on April 29, 1940, with the full knowledge and consent of the Langs and without objection on their part; that the Wesleys and Corodemases were wholly without knowledge or notice of any claims on the part of the Langs against their title to the property until the filing of the answer and cross-complaint herein; that from and after October 2, 1940, the Langs were represented by counsel and had become apprised of all facts in connection with all transactions involved herein; that thereafter they made claim against Harris and later gave him a full release, receiving through him the instruments and matters above mentioned; that the receipt of these considerations from or through Harris on October 27, 1942, including the acceptance of the grant deed to the Alpine property which was taken with the full knowledge that the Wesleys claimed to be the owners of the Oceanside property, constituted a ratification of Harris' delivery of the deed from Mrs. Lang to the Wesleys; that the acts, declarations and conduct of the Langs subsequent to April 18, 1940, constituted a ratification of the faulty delivery of the deed, and a recognition of the fact that title to that property had passed to the Wesleys and their successors; that such acts, declarations and conduct of the Langs established their laches and constituted a representation to the Corodemuses that the Wesleys were entitled to sell the Oceanside property insofar as any claims of the Langs might be concerned; and

that by their acts, declarations and conduct the Langs are estopped to assert the invalidity of the respective and successive titles of the Wesleys or of the Corodemuses to that property.

Judgment was entered quieting title to the Oceanside property in the plaintiffs and denying any relief to the Langs on their cross-complaint. From this judgment the Langs have appealed.

The appellants' main contention is based on the court's findings to the effect that Harris' delivery of this deed to the Wesleys was beyond the scope of his authority, and that such purported delivery did not, of itself, effect a valid or legal delivery of that deed. It is argued that in the face of those findings a judgment in favor of the respondents is contrary to law; that title cannot pass where a deed is not delivered by the grantor or someone duly authorized by the grantor; that no valid delivery having taken place it conclusively appears that this deed is void; and that the Wesleys, having obtained no title to this property, could convey none to the respondents. It is then argued that the further findings of ratification, laches and estoppel on the part of the appellants are entirely without evidentiary support; that it clearly appears that the appellants were at all times claiming to be the owners of the Oceanside property and entitled to the immediate possession thereof; that at all times the appellants were asserting that the purported possession of the property by the Wesleys and the Corodemuses was fraudulently obtained and constituted a forcible entry and a forcible unlawful detainer; and that since all parties were brought before the court it was within the power of the court and the duty of the court to restore them all to their original position.

Although there is no evidence of any fraud or unfair dealing on the part of the Wesleys or their successors, the Corodemuses, who knew nothing of the appellants' private dealings with Harris or the Gross', and although the appellants at all times knew that the Wesleys had recorded their deed and were claiming title, and although the appellants, through their agent and with full knowledge, received at the beginning and immediately used a part of the consideration paid by the Wesleys, and later received and retained the rest of that consideration, they now contend that all of these things are immaterial, and that the fact, as found by the court,

that the original delivery of this deed was at that time unauthorized conclusively establishes that the Wesleys, and their successors, acquired no title to the property. While the facts are somewhat involved, the more they are examined and understood the less understandable the contention of the appellants becomes. The only reasonable explanation of appellants' acts and conduct, as thoroughly established by the evidence, would seem to be that they got just what they thought they were getting from the Wesleys, but that they were disappointed in their expectation of being able to use that consideration for the purpose of getting what they wanted from Gross. They knew that the deed had been delivered to the Wesleys and recorded and that they were in possession and claimed the property as their own, and they made no objection but continued to try to work out their deal with the Gross'. When that deal fell through they still used part of the proceeds received from the Wesleys, through their claim against their agent Harris, to obtain a cancellation of their $325 indebtedness and of their obligation to Gross, and to get back the deed to the Alpine property, which was a part of the consideration they had received from the Wesleys, cleared of the attachment thereon. And even then they remained silent, while continuing to hold the deed to the Alpine property. The offer of exchange for the Gross property and the escrow agreement entered into a few days later, when examined together, indicate that the appellants at that time valued their equity in the Oceanside property at $1,000, and the evidence indicates that they received a value much greater than that from the Wesleys. The well known fact that, due to war conditions, the value of buildings in that neighborhood which contain living quarters greatly increased, during the intervening three and one-half years before any complaint was made, is very suggestive.

While the matter is not involved here, since the respondents did not appeal, it is not clear why the court found that the original delivery of this deed was unauthorized. The weight of the evidence would seem to be to the contrary not only because of the acts and conduct of the parties in respects which are otherwise unexplainable, but because of Mrs. Lang's statements when her deposition was taken. At that time, while being questioned with respect to the delivery of this deed, she was asked: "Q. They were supposed to have it. You

told Mr. Harris to give it to them, didn't you? Is that right?" And she replied: "A. Yes, well, it must have been, because they were supposed to have it."

In any event, whether or not the original delivery of this deed to the Wesleys was duly authorized is not a conclusive element in this case. The mere statement of the appellants' contentions is a sufficient answer to them, and the legal principles are so well established that no citation of authority is called for. Assuming that the original delivery of this deed was unauthorized at the time, there is evidence of the strongest possible nature supporting the other findings which are attacked. There not only appears a complete case of the ratification of the delivery of this deed but an unusually strong case of laches and estoppel. The Corodemuses were innocent purchasers of this property for value and the appellants knowingly created a situation, and permitted it to long remain, upon which these respondents were fully justified in relying. The Wesleys are in a similar position and the appellants have fully settled with their agent Harris, who was originally blamed for their troubles. The essential findings are not only amply supported by the evidence but it is difficult to see how the court could have found the other way.

The judgment is affirmed.

Marks, J., and Griffin, J., concurred.